This is a redhibitory action instituted by the plaintiff against A. B. Campbell and A. J. Brown, who, it avers, when the cause of action herein alleged upon arose, composed a commercial copartnership under the name of "A. B. Campbell". Plaintiff alleges that on April 13, 1945, through its president, O. O. Latimer, it purchased from said partnership a pair of mules for which it paid $300 cash; that prior to the purchase plaintiff's president made known to said Campbell his company's need of a pair of sound mules that were trained in the hauling of logs; that when the mules were delivered to plaintiff a written guaranty was signed by the partner, A. J. Brown, and delivered to plaintiff wherein said mules were guaranteed as sound, gentle, and trained to work in logging operations.
Plaintiff also alleged that immediately after purchasing the mules they were put to work at hauling logs and it was then discovered that one of them was sulky, would not pull with the other one, and in all respects was wholly unsuited and untrained to do the work for which it was purchased and for which it had been guaranteed; that because of these vices and conditions the sale of the mules is subject to and should be rescinded and the price paid therefor returned to plaintiff. Plaintiff further alleged that on April 28, 1945, it tendered the mules back to said partnership, represented by said Campbell, at its place of business in the City of Alexandria, Louisiana, and that he refused to accept the same.
In the alternative, and only in the event the Court should find and hold that there was no partnership existing between Campbell and Brown at the time the mules were purchased, plaintiff alleged that said Campbell is and was the sole owner of the business of A. B. Campbell, and that he, individually, sold the mules to plaintiff through Brown as agent, and likewise guaranteed them.
Plaintiff prayed for judgment against Campbell and Brown, individually, and in solido, for $300 with legal interest from judicial demand; and, in the alternative, for judgment for said amount against A. B. Campbell, individually. Service of process could not be made on Brown as he, very soon after the sale of the mules, left Alexandria and his whereabouts was unknown.
Answering, Campbell denied each and every allegation of the petition excepting those relating to tender of the mules to him by plaintiff and his refusal to take possession of them, which he admits. He avers that he refused to accept tender of the mules because he had never owned them and had not sold them to plaintiff. He further alleged that he has at all times been the sole owner of his business.
Subsequent to joinder of issue by answer, Campbell died testate. His wife, Mrs. Beulah H. Campbell, as executrix, was by order of the Court substituted as party defendant.
The lower Court awarded plaintiff judgment, for which it prayed, against the executrix and she appealed to this Court.
The testimony is conclusive on three points in the case:
1. That there was no partnership between Campbell and Brown;
2. That Campbell at no time owned or had any proprietary interest in the mules involved herein;
3. That one of the mules was valueless in logging operations because it did not possess the qualities needful therefor, which it was guaranteed to possess. This vice renders the sale of both animals amendable to suit to rescind same. Civil Code, Articles No. 2529, No. 2540.
It appears that Mr. Campbell had been in the business of buying and selling horses and mules in the City of Alexandria for some 13 years at the time of the events that led to this suit. He formerly lived in the State of Texas and there knew Mr. Brown. In the early part of April, 1945, Brown brought from Texas to Campbell's place of *Page 80 
business a truck-load of Percheron mares and requested to rent from him space in which to keep them. Campbell declined the request but did make available to Brown, free of charge, a lot in which the animals could be held. Brown thereafter exchanged two of the mares for the mules in question and they were brought to and kept on the lot with the mares until delivered to plaintiff.
A. B. Campbell, because of his long experience in dealing in livestock, knew mules. His guarantee of their qualities meant a great deal to those who purchased from him. The record reveals that he invariably made good his guarantees of the mules and horses sold by him, when after test, they proved to be deficient in the respects for which they were guaranteed.
Plaintiff previously had purchased logging mules from Campbell and, naturally, had much confidence in his word with respect to their qualities and character, and relied implicitly upon his guaranty.
Being in need of a pair of logging mules on April 11, 1945, plaintiff authorized its woods foreman, Sam Young, to endeavor to locate same. He went to Mr. Campbell's stables and explained to him what he wanted, and he testified that Campbell replied that he had a good pair of mules he would sell him. The two mules in question were shown to Young by Mr. Campbell who quoted him the price that was afterward paid for them. Young did not know Brown and did not discuss the mules with him, although it is certain he was present. Young reported what he had learned to Mr. Latimer and on the following day Latimer went to Campbell's place of business, looked the mules over, told Mr. Campbell the kind of mules he wished, heard what Campbell had to say about their good qualities, etc., and agreed to buy them for $300. He is certain that his discussion of the mules was entirely with Campbell and that Campbell guaranteed the mules in every respect to possess the qualities desired in them. Mr. Brown was present for a time and joined in the sales talk, but prior to that time Latimer had never seen him.
Mr. Latimer required that the front feet of the mules be shod, which was done at Campbell's stables. He also required that they be delivered to his coral a few miles north of Alexandria.
The morning following Latimer's visit to Campbell's place, being April 13th, Brown arranged with Campbell to have one of his colored employees transport the mules to the corral in one of Campbell's trucks. The mules were loaded into the truck and were first driven to plaintiff's office in the City of Alexandria. Brown rode in the truck. Mr. Latimer then drafted an instrument of guaranty of the mules that was signed as follows:
"A. B. Campbell and Pard. By: A. B. Campbell By: A. J. Brown."
It begins as follows:
"We, the undersigned, A. B. Campbell and Pardner * * *".
Campbell was not present when the instrument was signed, and so far as the record shows, had no knowledge of its existence until possibly when this suit was filed. Of course, it is not binding on him nor is it binding on the executrix of his succession.
It was at this time and place that Latimer was told by Brown that he and Campbell were partners on a 50-50 basis, in the business that was and had been at all times exclusively Campbell's. This information evidently influenced Latimer in drafting the guaranty in the form mentioned above. It is certain that prior to this time he had not not been told that Campbell and Brown were partners. However, notwithstanding all this, the check for the price of the mules was made payable to A. B. Campbell. The mules were then driven to plaintiff's corral, and Brown thereafter returned to Campbell's office. He showed Campbell the check but Campbell declined to endorse it as Mrs. Campbell attended to keeping the books of the business, making bank deposits, and endorsed all checks. She was called on the 'phone and asked to come to the office and on her arrival the check was delivered to her for collection, She went to the bank on which it was drawn, either that afternoon or next morning, endorsed her husband's name thereon and it was honored. She returned to the office and handed Brown the *Page 81 
entire amount from which he then paid Campbell $7.50 for the use of his truck and employee in delivering the mules. A few days later Brown left with a few of the mares he had brought from Texas and has not since been heard from.
The trial judge in written reasons for his judgment made the following impressive summary of the facts, on which he mainly predicated judgment, to-wit:
"Campbell does admit that he was engaged in the buying and selling of horses and mules. And there is no dispute that the mules were at Campbell's place of business; that some of the negotiations were carried on by him and in his place of business; that they were delivered to plaintiff from Campbell's place of business in Campbell's truck, driven by Campbell's own hostler or truck driver. The check issued in payment was made to Campbell, was cashed by Campbell through Campbell's wife in Campbell's name. That, in addition to all this, the delivery was accompanied by a delivery ticket, or invoice, with the signature 'A. B. Campbell' thereon, which his widow testified 'could be' Campbell's signature. Campbell knew Brown. Latimer did not. Campbell could have made it perfectly plain that Brown alone was the seller. This he did not do.
"As to the negotiations leading up to the purchase and sale of the mules, the preponderance of the testimony is that Campbell held out to the plaintiff that they were Campbell's mules; that Campbell knew what plaintiff wanted and was assured by Campbell that these mules would do the work. The Court doesn't overlook the fact that Campbell could not testify. But, it is inconceivable that plaintiff would be satisfied to deal with and take a guarantee from some itinerant horse and mule dealer, about whom he knew nothing, when every act on the part of Latimer indicated that he thought he was dealing with Campbell."
Our study of the record convinces us that this summary correctly reflects proven facts of the case.
Plaintiff failed to establish a case against Campbell either on the primary or alternative demand in that the testimony disproves that the mules were owned or sold by the alleged partnership, and that in selling the mules Brown acted as Campbell's agent; but, by an abundance of testimony, introduced without objection, Campbell's liability to plaintiff, on a theory not alleged upon, was established.
True it is that Campbell had no proprietary interest in the mules, but evidently out of a desire to be of assistance to his old friend, Brown, he for all legal intents and purposes unwittingly perhaps, made himself a party to the sale, guaranteed the qualities of the animals, and otherwise by action, conduct and declarations confirmed in Latimer his belief that the mules belonged to him, all of which encouraged Latimer to make the purchase.
There is no intimation of bad faith nor of questionable designs on the part of Campbell. Such need not exist to render him responsible to plaintiff. One may become a party to a sale of a thing and render himself responsible as warrantor, guarantor, or otherwise, to the purchaser although he have no real interest in the thing, the object of the sale. And when, in such case, the purchaser relies upon the intervention of such person in the sale, and is thereby influenced to part with anything of value, such person will not be thereafter allowed to escape his responsibility to the purchaser by asserting lack of ownership of or interest in the property covered by the sale.
Defendant, in brief, challenged the right of plaintiff to prove and rely upon any oral agreement or commitment by Campbell, antedating the signing of the written guaranty by Brown, and argues that by so doing plaintiff attempted to shift its position, which, under the pleadings and law, was not permissible; that having sued on said written guaranty its case must stand or fall on that premise. In support of this position it is argued that (although not objected to when offered) the referred to testimony is incompetent evidence under Article No. 2276 of the Civil Code, and should not now be considered in determining the issues of the case. The article reads as follows, viz.: "Neither shall parol evidence be admitted against or beyond what is contained *Page 82 
in the acts, nor on what may have been said before, or at the time of making them, or since."
We think the point not well taken. The written guaranty, on its face, purports to be an obligation of a nonexistent partnership, not a guaranty of Campbell, individually. The instrument is sued on as a partnership obligation; not as an obligation of Campbell, individually. The guaranty, by testimony elicited by both sides, was proven to be without legal effect save as to Brown individually. In view of these undeniable facts, we are unable to perceive why or wherein plaintiff should be precluded from proving by parol testimony, unobjected to, agreements and commitments by Campbell, made prior to the execution of the guaranty, that render him individually liable to plaintiff on a theory not alleged upon; and we hold that such could be done.
It is obvious that testimony to establish liability by Campbell to plaintiff on a cause of action not alleged upon, if timely objected to would not have been admitted. Such testimony enlarged the pleadings, but this does not authorize its exclusion now. We are warranted in considering it in determining the issues of the case.
After submission of the case below but prior to rendition of judgment, defendant filed a plea of estoppel for consideration in the event the Court should find and hold that plaintiff had made out a case. The plea is predicated upon the proposition (assumption) that the status quo ante cannot be restored because Mr. Latimer testified that he did not know the whereabouts of the mules.
Campbell refused to allow the mules left on his premises, when tendered to him. They were then and there turned loose to roam at large. Several days thereafter the mules were impounded by some one and upon learning of this, Latimer paid the pound charges and had the mules put in the pasture of Mr. R. L. Walker, his business associate. On May 10, 1945, plaintiff's counsel by letter made demand on Mr. Campbell for return of the $300 paid for the mules, wherein it is said: "* * * These mules are being held for you and subject to your orders and the expense of their keep from April 28th will be yours."
It is true that Mr. Latimer testified that he had not seen the mules since they were put in Walker's pasture and did not at time of trial definitely know their whereabouts. But this does not necessarily mean that the mules are not in existence or that they cannot be made available when this case has been finally concluded.
This case in some respects has singular phases. The issues, so far as concerns Brown, cannot be finally adjudicated as, for lack of service, he is not before the Court. When plaintiff has been reimbursed the amount paid for the mules, surely its ownership thereof will terminate. The question then will be posed: Who owns the mules?
We believe the lower Court correctly decided the case and for the reasons herein assigned, the judgment from which this appeal was taken is hereby affirmed with costs.
 On Rehearing